SHORES, Justice
(dissenting).
I respectfully dissent. I cannot read the will in this ease and conclude, as the majority does, that the testator intended to bequeath his entire estate to his eldest daughter, to the exclusion of his widow, his younger daughter, and the only surviving child of his only son.
The intention of the testator is the polestar in the construction of any will, and courts are required, even though the will is drawn by a person with no great skill in communication, to determine as best they can what that intention was. The will in its entirety reads:
“This document consisting of 3 handwritten pages constitutes my desires as to any and all property real and personal, effects of mine or due me, and my interest in anything or everything material or otherwise that will be left at my death. It is my intent that this be my legal last will and testament.
“I desire and hereby designate my oldest daughter, Marilyn Anne Bradford, to be the executrix of this will. Since I impose total, complete confidence and trust in her I do not want any Bond of any kind to be required of her in the execution of this. She is not to be required to account for any expenditures, decisions or disbursements to anyone other than those that would be legally required of me were I to be conducting my own affairs. Any records or receipts or such will be entirely at her discretion and for her own benefits. I am confident that she will pay any and all outstanding bills incurred by me after assuring that they were legally contracted by me. Any expenses incurred by my death will be paid from insurance benefits as soon as possible.
*614 “AH of my possessions, property, money, insurance benefits, collectable receipts, retirements, letters and papers, or things considered to be mine will constitute my ‘estate’ unless legally specified otherwise by law. I very strongly desire that no lawyers be required nor involved in the execution of this document unless specifically desired or required by Marilyn and at her own discretion. What is mine at my death should become the property of those I wish to have it and not those that some legal statute thinks should have it.
“The proceeds or income from the Survivor Benefit Plan payable by the Marine Corps will go to mv surviving widow. Social Security benefits entitled to and payable upon my death will also go to the surviving widow. All other benefits of my insurance in force are hereby designated to be payable to my estate.
“I hereby will and bequeath my entire ‘estate’ to Marilyn Anne Bradford, as an individual, to divide and disperse as she sees fit or to be held in trust by her alone for any period of time she wishes. For the purpose of inheritance laws she may designate at my death what portions of my estate will go to others according to agreement between her and myself. This will for legal purposes be the same as if I made the specific designations in this my last will and testament.
“In event that any individual, person, or entity attempts to contest the provisions of this document or endeavors to go against my expressed wishes as herein set forth I bequeath the sum of one dollar ($1.00) payable in cash as complete satisfaction of all entitlements such individual, person, or entity might be entitled to.
“The foregoing represents my desires and intent is clearly stated. I am of sound mind and under no pressure or influence in writing this. I charge everyone involved in any way in this document to honor it first according to the laws of God and secondly according to the laws of society.
“Made and signed this 17th day of November, 1978, at my office in Colum-biana Ala.
“/s/ Robert W. Tucker Jr.
“Witnessed:
“Annette Martin
P.O. Box 116
Shelby, AL.
“Adell I. Edmondson
P.O. Box 337
Columbiana, Al 35051
N.P. com. exp. 8/11/80
“Leeida S. Nicholson
107 Goodwin St.
Columbiana, Al. 35051
“Codicil to Last Will & Testament of Robert W. Tucker, Jr.
“Will dated November 17, 1978
“ITEM ONE: I amend the second full paragraph of page 2 of my will, which begins T hereby will and bequeath my entire “estate” ... ’ so that I bequeath and will to my wife, Laura A. Tucker, any and all of my estate over and above $600,000.00 in value, and only the first $600,000.00 in value shall be administered by my daughter Marilyn Anne Bradford as provided in my will. I give my daughter, Marilyn Anne Bradford, full discretion to determine which items of my property shall be given to my wife under this provision, provided that all property given to my wife shall be property qualified for the marital deduction for federal estate tax purposes.
“ITEM TWO: All other provisions of my will shall remain as written.”
The will here is ambiguous in every regard except as to the testator’s low regard for the legal profession. What estate does the will vest in the eldest daughter? Is it an estate in fee? Surely not, since the will says the property was bequeathed to her “to divide and disperse as she sees fit or to be held in trust by her alone for any period of time she wishes.” It is susceptible to the construction that the testator intended his oldest daughter to act as executrix and to divide the estate among his other children and grandchildren. It is also susceptible to the construction that he intended her to hold his estate in trust for the benefit of *615 his widow and children and grandchildren pursuant to an agreement with his eldest daughter. The fact that his eldest daughter now denies that there was an agreement to that effect cannot absolve a court of its duty to ascertain his intention and give it effect.
In Wolffe v. Loeb, 98 Ala. 426, 13 So. 744 (1893), decided in a much gentler time, this Court had before it the following will:
“State of Alabama, Montgomery county: Know yea, by these presents, that I have declared made this my last will, that in the event of my death, my wife, Lena Wolffe, shall be the sole controller of all my real estate, my personal property, any stock or bonds, which are assigned to me, or will be by reason of paying up this unpaid installment. All and everything now under the name and firm of B. Wolffe & Brother; also everything in real and personal property under the style of Wolffe, Abraham & Co., also all the real estate yet under the style of Berg & Wolffe, such and everything now under the name and style of N. Wolffe & Bro., real estate, personal property, chattel mortgages and everything which I now possess without distinction, I make my wife sole controller just the same as if I was alive, and in order that this will shall not have to come about of any dispute or misconstruction, I declare this will incontestible.
“This my last will, shall be probated after my death, and the property turned over to my wife. Out of this all just debts shall be paid out of the undivided part of all property now in the different above mentioned firms. Signed this the 11th day of June, eighteen hundred and eighty-seven. Sam Wolffe. Witness: E.C. Seligman, Alex. Sternfeldt.”
The widow contended that the will left her an absolute fee simple estate in her husband’s property. The children contended that they were entitled to a share under the statute of descent and distribution.
There, Justice Haralson, writing for the Court, said:
“It is a legal truism, that the cardinal rule, — the one above all other rules, — for the construction of a will is, to ascertain the intention of the testator and give it effect. Wills are often drawn by persons very unskilled in the use of language, and are loose and inaccurate in expression, and this will is of that class. But however [inartfully] or inaccurately expressed a will may be, when the judicial mind is brought to its construction, the effort is to ascertain from the language employed, the surroundings of the testator and the objects of his bounty, what his intentions were in the disposition he has made of his property, and when ascertained, to give effect to that intention, if it is not inconsistent with the law.—Whorton v. Morangue, 62 Ala. 209; Alford v. Alford, 56 Ala. 352.
“Samuel B. Wolffe, we may reasonably infer from the evidence, was in the prime of life, when he executed his will, and when he died. His wife, Lena, was not yet old. At his death, they had four children, all minors, the eldest, seventeen years old, and one, Samuel, was born after his decease. According to the ordinary and natural instincts of the human mind and heart, without something to indicate a good reason for a contrary course, a testator thus circumstanced, if he will make a will at all, will make some just and equal provision for his children, and take care that the means of their maintenance and education be not left dependent upon the will or disposition of their mother, — of the age this one was. It would probably have occurred to the testator, that at her age, his wife might contract, after his death, another marriage, and if so, and all he had were vested by his will absolutely in her, his children, born in his life time, might in the vicissitudes of fortune, or by some influence to which she might be subjected, be deprived of inheritance in his estate. He could not have been ignorant of the fact, also, at the time he made his will, that his wife was of the age to bear other children, and he probably knew, before he died, that she was then [carrying his] unborn child. As to such as might be born after the execution of his will, he knew also, that in the absence of *616 a provision in the will for such contingency, the birth of such, whether in his life, or afterwards, would work a revocation of his will, so far as to allow such child or children to take the same share of his estate, as if he had died intestate. — Code, § 1955. Without some good grounds to induce it, one would be slow to believe he intended to make discrimination in the bestowment of his generosities in favor of unborn children, over those already born, who were of his household and whose lives had already been interwoven by the ties of parental and filial love with his own.
“In this construction, it is pertinent to refer to two of Jarman’s rules of construction, having their foundation in natural justice and goodness. 5. That the heir is not to be disinherited without an express devise or necessary implication; such implication importing, not natural necessity, but so strong a probability, that an intention to the contrary can not be supposed; and 6, that merely negative words are not sufficient to exclude the title of the heir or next of kin. There must be an actual gift to some other object. —2 Jarman on Wills, 2nd Am.Ed., § 525, later Ed.3 Vol. 704.
“In Denson v. Autrey, 21 Ala. 209, this court, speaking upon this subject said, ‘Indeed, to defeat the heirs at law, or the distributee under the contract, the property must be disposed of by will, and mere words of exclusion, without a disposition of the property, can not have that effect, for the property not being devised or bequeathed, the statute then designates who shall take.’
“In Banks v. Sherrod, 52 Ala. 270, the following language in support of the same principle, is employed: ‘The law, and courts of justice, pursuing its spirit and maxims, have always favored heirs. They are appointed by the law to succeed to the estate of which a valid disposition is not made by will. Plain words are required to disinherit them. Though it may appear the testator did not intend that his heirs or next of kin should take his estate, real or personal, and intended to exclude them from succession to it, yet, if he fails to make a valid devise or gift to another, they will take under the statute of descents and distributions.’ It is a maxim at common law, that the heir at law can not be disinherited except by express devise or by necessary implication.—Wharton v. Morangue, 62 Ala. 209; Haxton v. Corse, 2 Barb. Chan. 506, 522; Chamberlain v. Taylor, 105 N.Y. 185 [11 N.E. 625]; Schouler on Wills, § 545.”
Like the Court in Wolffe v. Loeb, I would hold that, there being no clear expression compelling such a result, this will did not disinherit the heirs at law of the testator.
For these reasons, I dissent.
ADAMS, J., concurs.